SANDRA CABRINA JENKINS, Judge.
11 J.W.,[1] a juvenile, appeals his delinquency adjudication for battery of a police officer, a violation of La. R.S. 14:34.2. In the one assignment of error presented to this Court on appeal, J.W. challenges his adjudication on the grounds that there was no reasonable suspicion for a detention or probable cause for an arrest. For the following reasons, we affirm the delinquency adjudication.
FACTUAL AND PROCEDURAL BACKGROUND
On November 13, 2013, the State filed a petition charging J.W. with one count of battery of a police officer. The adjudication hearing was held on February 12, 2014 with New Orleans Police Department (“NOPD”) Officer Brandon Callias (“Officer Callias”) appearing as the State’s sole witness. J.W. did not present any witnesses.
Officer Callias testified that he and his partner, Officer Willard Pearson (“Officer Pearson”), were conducting proactive patrols in their assigned district on November 6, 2013. According to Officer Callias, he saw J.W. run from the 12alleyway of a known drug house, while looking over his shoulder at their marked police vehicle and clutching his waistband.
Officer Callias testified that, based on his six years of experience, when one grips his waistband, it typically indicates that he has a weapon. Because of this inference, Officer Callias testified that he requested J.W. to come to the police unit. J.W. ignored the Officer’s request and instead shouted profanities. According to Officer Callias, he approached J.W. and grabbed him by his arm to escort him to the vehicle. J.W. then elbowed the officer in the chest causing the officer’s grip to be released. When the officer attempted to regain his grasp of J.W.’s arm, he swung at the officer, but did not make contact. With the help of Officer Pearson, the officers were ultimately able to handcuff J.W. and place him in the police vehicle.
The trial court adjudicated J.W. delinquent for battery of a police officer and immediately proceeded with his disposition hearing. The trial court committed J.W. to the Department of Public Safety and Corrections for a period of six months, however, J.W.’s commitment was suspended and he was placed on active probation for one year. This appeal followed.
LAW AND ANALYSIS
In juvenile appeals, this Court reviews both “facts and law to determine whether there is sufficient evidence of proof beyond a reasonable doubt to adjudicate a child a delinquent.” State in the Interest of D.R., 10-0405, p. 8 (La.App. 4 Cir. 10/13/10), 50 *762 So.3d 927, 932. Furthermore, appellate courts must accord great deference to the trial court’s factual findings, credibility determinations, and assessments of the testimony of witnesses. State ex rel. W.B., 08-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61 (citing State in the Interest of J.N., 07-1229, p. 8 (La.App. 4 Cir. 5/7/08), 984 So.2d 910, 915).
J.W.’s delinquency adjudication for battery of a police officer is defined as “a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.” La. R.S. 14:34.2(A)(1). J.W. is not challenging the sufficiency of the evidence as to his adjudication; rather, J.W. asserts that the trial court erred in his adjudication given that there was no reasonable suspicion for a detention or probable cause for an arrest.
When a detention is for the limited purpose of allowing officers adequate time to examine suspicions of criminal activity, it is deemed an investigatory stop rather than an arrest. State v. Turner, 13-0180, p. 2 (La.3/1/13), 108 So.3d 753, 754 (quoting U.S. v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); State v. Miller, 00-1657, p. 3 (La.10/26/01), 798 So.2d 947, 948 (per curiam)). Officer Callias’? hearing testimony represents that J.W. struck the officer almost immediately after he had attempted to approach J.W. to escort him to the vehicle; thus, these two events were very close in time. J.W. asserts that the officer’s grab of J.W.’s arm was a physical restraint which automatically escalated the scenario to an arrest. We reject this contention. As this Court has stated: “Inherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention.” State v. Stewart, 13-0779, p. 8 (La.App. 4 Cir. 1/22/14), 133 So.3d 166, 171 (quoting State v. Porche, 06-0312, p. 7 (La.11/29/06), 943 So.2d 335, 339). We find that at the time J.W. struck Officer Callias, J.W. was not under arrest, and that this incident was nothing |4more than an investigatory stop. J.W.’s argument that he had a right to resist an unlawful arrest is therefore without merit.
J.W.’s remaining argument is that Officer Callias lacked reasonable suspicion to conduct an investigatory Terry stop[2] under La.C.Cr.P. art. 215.1,[3] thereby rendering the detention unlawful.
J.W. contends that Officer Callias had no grounds to detain him. He argues that merely observing a person run from an alleyway of a known drug house, while looking over his shoulder at a marked police car, and clutching his waistband, is not enough. In furtherance of this argument, J.W. stresses Officer Callias’ hearing testimony that he neither saw J.W. do anything criminal nor had any specific information regarding any criminal activity by J.W. J.W. contends that because the detention was unlawful, he had a right to resist; in support, J.W. cites jurisprudence stating that “if [a person] can be charged for resisting lawful detention the inference is that he may resist unlawful detention.” State v. Manuel, 06-0486, p. 5 (La.App. 4 Cir. 11/21/06), 946 So.2d 245, 248.
On the contrary, the State asserts that when Officer Callias encoun *763 tered J.W., he had reasonable suspicion to conduct an investigatory stop under La. C.Cr.P. art. 215.1. The State points out that the reasonable suspicion that justifies a Terry stop “need not rise to the probable cause required for a lawful arrest.” State v. Duhe, 12-2677, p. 7 (La.12/10/13), 130 So.3d 880, 885 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). The officer, however, “must have a particularized and objective basis for suspecting the particular person stopped of | .^criminal activity.” State v. Greenberry, 14-0076, pp. 4-5 (La.App. 4 Cir. 5/28/14), 141 So.3d 925, 928 (quoting State v. Temple, 02-1895, p. 4 (La.9/9/03), 854 So.2d 856, 859-60). Furthermore, our review must consider “the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training ...” State v. Ulmer, 12-0949, pp. 7-8 (La.App. 4 Cir. 5/29/13), 116 So.3d 1004, 1009 (internal quotation marks omitted) (quoting Temple, 02-1895, p. 5, 854 So.2d at 860).
When considering whether the officer’s investigatory stop was justified, “the reputation of an area is an articulable fact upon which a police officer may legitimately rely and is therefore relevant in the determination of reasonable suspicion.” Greenberry, 14-0076, p. 5,141 So.3d at 928 (quoting Temple, 02-1895, p. 5, 854 So.2d at 860). However, “an individual’s presence in an area of expected crime, standing alone, is insufficient to support a reasonable, particularized suspicion that a person is involved in criminal activity.” State v. McClendon, 13-1454, p. 10 (La.App. 4 Cir. 1/30/14), 133 So.3d 239, 248 (citing Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). Thus, additional, independent factors are required to prove a reasonable suspicion of criminal activity. Factors such as “flight, nervousness, or a startled look at the sight of a police officer” may warrant a finding of reasonable cause to stop an individual. State v. Vingle, 01-0840, p. 5 (La.App. 4 Cir. 11/21/01), 802 So.2d 887, 890 (citing State v. Belton, 441 So.2d 1195 (La.1983); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (LaApp. 4 Cir.1990)). Likewise, an individual’s unprovoked flight in a high-crime area has been found sufficient to justify an investigatory stop. State v. Robertson, 13-1403, pp. 8-9 (La.App. 4 Cir. 4/9/14), 136 So.3d 1010, 1015 (quoting State v. Morgan, 09-2352, p. 6 (La.3/15/11), 59 So.3d 403, 407).
It is well established that “in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” State v. Boyer, 07-0476, p. 20 (La.10/16/07), 967 So.2d 458, 471 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868,1883, 20 L.Ed.2d 889 (1968)). The juvenile court found that J.W.’s unprovoked flight while grabbing his waistband, coupled with the high-crime area, and Officer Callias’ inferences and deductions based upon his six years of experience, taken together, support a finding of reasonable suspicion. Given the juvenile court judge’s ability to examine the credibility of witnesses, after a review of the testimony, we do not find that the juvenile court abused its discretion in finding reasonable suspicion for the stop.
As we conclude there was adequate reasonable suspicion to justify the investigatory stop, J.W.’s contention that he had a right to resist an unlawful detention is meritless. Because, as recognized at the outset, the detention did not rise to the level of an arrest, J.W.’s assertion that he *764 had a right to resist an unlawful arrest is likewise without merit. Moreover, J.W. does not assign error as to the sufficiency of the evidence for his adjudication. Accordingly, J.W.’s battery on the officer was unjustified, and J.W.’s delinquency adjudication was not error.
DECREE
For the forgoing reasons, the judgment of the trial court adjudicating J.W. delinquent is affirmed.
AFFIRMED.
LOBRANO, J., concurs in the result.

. As J.W. is a juvenile, he will be referred to by his initials. La. Ch.C. art. 412(a).

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. La.C.Cr.P. art. 215.1 provides: "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.”